DA 11-0367

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 37N

IN THE MATTER OF:

K.J.C.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDN 2008-38
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

    Elizabeth Thomas, Attorney at Law, Missoula, Montana

    For Appellee:

    Steve Bullock, Montana Attorney General; Tammy K. Plubell, Assistant
Attorney General, Helena, Montana

    Leo J. Gallagher, Lewis and Clark County Attorney; Tara Harris, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:  January 11, 2012

Decided:  February 14, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Parents appeal the District Court's order terminating their parental rights over minor child K.J.C. We affirm.

¶3 Concerns arose regarding K.J.C. immediately after his birth on December 8, 2008. Medical personnel allowed the parents to take K.J.C. home from the hospital. Social workers soon had reports, however, that the parents had taken K.J.C. out into a blizzard. Social workers also discovered that the parents had removed K.J.C.'s umbilical cord because "it got in the way." Social workers took K.J.C. to the emergency room at St. Peter's Hospital. The emergency room doctor examined K.J.C. and treated him for several small injuries.

¶4 The parties stipulated to temporary legal custody by the Department of Public Health and Human Services (Department). The District Court approved a treatment plan for the parents on March 24, 2009. The treatment plan focused on the ability of parents to care for K.J.C. Among other things, the treatment plan required the parents to complete a psychological evaluation, work with Family Concept to demonstrate parenting skills, maintain safe and stable housing for K.J.C., maintain financial stability, attend individual

2

and family counseling, maintain contact with the child protection specialist, sign releases, and allow access to their housing.

¶5 The Department determined on October 21, 2009, that parents had made sufficient progress in the treatment plan to warrant a trial home visit. The Department placed K.J.C. back in his parents' care on October 21, 2009. The Department determined that the trial home visit was not successful, however, and removed K.J.C. on December 18, 2009.

¶6 The court ordered a second treatment plan for the parents on February 3, 2010. The second treatment plan mirrored the first, but contained an additional requirement that the parents complete a parenting assessment. Both parents completed the assessment, but the Department still filed a petition to terminate the rights of both parents.

¶7 The District Court held a hearing on the Department's petition on July 12 and 13, 2010. The District Court denied the petition on the basis that both parents had complied with portions of the treatment plan. The court recognized that the treatment plan had not been successful and had failed to eliminate the concerns that had led to the Department's removal of K.J.C. from his parents' home. The court cited to the fact that parents had been given little time, however, to follow through with the recommendations of the parenting assessment.

¶8 The Department developed a plan to implement the recommendations made in the parenting assessment. The Department arranged for the parents to work with additional social workers. The social workers assisted the parents in individual counseling, family therapy that included K.J.C., and in-home support during visits with K.J.C. The social

3

workers logged hundreds of hours with the parents. This work included an intensive 38-hour in-home assessment conducted from May 14, 2010, through May 20, 2010.

¶9      The Department filed a second petition to terminate on February 18, 2011. The Department alleged the same concern regarding the parents' ability. These concerns included safety issues, lack of motivation, resistance of feedback from providers, difficulty in reading K.J.C.'s cues, and dishonesty. The court held a hearing on May 9, 2011. The court took judicial notice of the testimony presented at the first hearing in July 2010. The District Court heard testimony and eventually agreed with the Department's request to terminate the parents' parental rights. Parents appeal.

¶10     Parents argue on appeal that they were making sufficient progress with respect to the treatment plan and the Department should have given them further time. They argue in this regard that the District Court's finding that their unfit condition was unlikely to change within a reasonable time was not supported by clear and convincing evidence. We review for an abuse of discretion a district court's decision to terminate parental rights. We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions. The record and briefs before us demonstrate that the District Court did not abuse its discretion in terminating parents' parental rights.

¶11     Affirmed.

/S/ BRIAN MORRIS

We Concur:

4

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON